IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


TRACEY LYNNE WALTER,

                    Plaintiff,

          v.                                              Civil Action No. 5:12-cv-65

MICHAEL ASTRUE,
Commissioner of Social Security,

                    Defendant.



**REPORT AND RECOMMENDATION THAT MS. WALTER'S
MOTION FOR SUMMARY JUDGMENT BE DENIED AND COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT BE GRANTED**

**I.  INTRODUCTION**

**A. Background**

          Tracey Lynne Walter brought this action under 42 U.S.C. § 405(g) for review of the decision

of the Commissioner of Social Security that denied her claims for disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for supplemental security

income under under Title XVI, 42 U.S.C. §§ 1381-1383f.[1] Commissioner filed his Answer on July

24, 2012.[2] Ms. Walter filed her Statement of Errors, which this Court will treat as a motion for

summary judgment, on August 16, 2012.[3] Commissioner filed his Motion for Summary Judgment

---

          [1] Dkt. No. 1.

          [2] Dkt. No. 10.

          [3] Dkt. No. 20.

on September 17, 2012,[4] and Ms. Walter responded on September 26, 2012.[5]

**B. The Pleadings**

1. Ms. Walter's Statement of Errors.

2. Commissioner's Motion for Summary Judgment & Memorandum in Support.

3. Ms. Walter's Reply in Response to Commissioner's Motion.

**C. Recommendation**

I recommend that:

1. Ms. Walter's Motion for Summary Judgment be **DENIED** because: the ALJ properly discredited Ms. Walter's subjective complaints, and any opinions from medical professionals that relied on as such; the ALJ's decision was based upon substantial evidence; and Ms. Walters due process rights were not violated .

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

## II. FACTS

**A. Procedural History**

Ms. Walter first applied for disability insurance benefits and supplemental security income in January 1999. Those applications were denied in the first instance on March 31, 1999. No appeal of the decision was taken. On March 18, 2004, Ms. Walter again applied for the same benefits, alleging disability as of May 15, 2003, due to anxiety, depression, chronic neck and back pain, and chronic obstructive pulmonary disease. The requests were denied in the first instance, and on

---

[4] Dkt. No. 22.

[5] Dkt. No. 26.

reconsideration. (R. 50-52.) At Ms. Walter's request, an administrative law judge (ALJ) held a hearing on October 19, 2005, at which Ms. Walter, who was represented by a non-lawyer representative, and a vocational expert testified (R. 1369-1400.) On November 29, 2005, the ALJ issued a decision finding that Plaintiff could perform a modified range of unskilled, light work. (R. 53-67.) Therefore, the ALJ concluded, Ms. Walter was not disabled within the meaning of the Act. (*Id*.)

At this point in the procedural history the case takes an unusual turn. Ms. Walter appealed the ALJ's unfavorable decision to the Appeals Council, and on January 27, 2008, the Appeals Council vacated the hearing decision and remanded for further proceedings because it could not locate or reconstruct the record of that decision. (R. 68-71.) A new hearing was held on March 10, 2009, at which Ms. Walter appeared and testified without representation, and waived her right to the same. This hearing resulted in another unfavorable decision. (R. 25-41.) Ms. Walter again appealed to the Appeals Council, which, after reviewing several rounds of additional evidence, denied the request for review (R. 11-14.) Ms. Walter timely filed this civil action for review of the Commissioner's decision to deny her benefits.

## B. Personal History

Ms. Walter was born on January 18, 1962, as the youngest of three children. She received a high school diploma through regular classroom placement, and has had several periods of employment over the years. The longest employment period was for ten and one half years as a receiving clerk. Ms. Walter also performed home health care work for a period of two to three years, and worked in sales for another brief period. Ms. Walter is unmarried, and has a teenage daughter from a previous relationship; she lost another child in the minutes following a premature birth.

**C. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Ms. Walter is not under a disability and can still perform work in the national economy:

*1. Physical Health*

Ms. Walter's physical maladies date back to June 1997, when she fell backwards off a step at work. (R. 141, 1364.) This, coupled with other falls on the job and several automobile accidents, form the basis for her physical treatment. In 1997, Ms. Walter began seeing a chiropractor for her neck and back pain, which continued through 2004. (R. 203-17, 269-83, 904-79). Moreover, Ms. Walter was in physical therapy starting in 1997, although she was cleared to continue work during treatment. (R. 134.) An MRI revealed some slight reversal of the normal curvature, and a cyst posterior to the levator scapularis muscle. (R. 301.)

In February 1999, Ms. Walter had a cystic lesion removed from her forehead, which was later determined to be malignant. (R. 159-162.) Follow up records to this procedure show the condition as improved. (R. 173-93.) There was also a biopsy done on Ms. Walter's right upper arm in 2003, the results of which were benign. (R. 200-02.) In 2003, Ms. Walter was also diagnosed with chronic obstructive pulmonary disease. (R. 415.)

In 2004, the chiropractor that Ms. Walter was seeing referred her to the Ohio Valley Rehabilitation Network for pain management, which had the impression that Ms. Walter was suffering from chronic pain syndrome affecting both her neck and lower back and that she would benefit from a global pain management program. (R. 289-301.) In a study performed in August 2004 by Dr. David Ross, neuropathy was ruled out as a cause of the pain, but mild right S1 radiculopathy

was found. (R. 302-08.) A companion study done by Dr. Sanford, done on the same day as Dr. Ross's, revealed a number of issues, including: moderate bilateral facet area inflammation at C1-C7; moderate bilateral ligamentous inflammation at C4-C7, T1-T12, L1-5; and moderate bilateral myositis. An MRI also performed in August 2004 shows mild degenerative disc disease throughout the cervical spine, and minimal posterior disc bulging at C5-6 that does not create any significant spinal stenosis or neural foraminal compromise. (R. 316.) This MRI diagnosis was reaffirmed in 2008 (R. 1295-96.)

A trip to the emergency room in October 2004 for complaints of pain at a ten on a ten point scale led to a physical examination which revealed normal results that led the treating physician to believe that Ms. Walter was not in significant pain. (R. 313.) Nonetheless, she was diagnosed with chronic back pain with acute exacerbation. (R. 314.) Two physical residual functional capacity assessments were performed in 2004, one in April and the other in October, which assessed Ms. Walter as retaining the capacity to lift and carry up to fifty pounds occasionally and twenty-five pounds frequently. (R. 247-54, 321-28.) Moreover, the assessments articulated an ability to stand and walk, or sit, for 6 hours in the day, and the unlimited ability to push, pull, occasionally climb, and engage in other postural movements. (*Id.*)

A physician's summary from the Department of Health and Human Resources found Ms. Walter to be under a guarded/permanent disability that limits the ability to work. (R. 637-38.) Records from Ms. Walter's family doctor, Dr. Olexo, reinforce what has previously been outlined as chronic back and neck pain from minimal scoliosis, minimal endplate spurring, and minimal disc space narrowing. (R. 1056-1170, 1245-1271.) A CT scan performed in 2006 ruled out any cranial abnormalities that could contribute to Ms. Walter's physical ailments. (R. 1170.) A letter from Dr.

Olexo to the law firm representing Ms. Walter in her most recent appeal to the Appeals Council outlined the history of her treatment, and his opinion that Ms. Walter does not have the ability to maintain employment. (R. 1317-18.)

### 2. Mental Health

Ms. Walter's history of mental health issues dates back to the early 1990s when her son died minutes after childbirth. (R. 1301.) Shortly after her son's death and the birth of her daughter, Ms. Walter became separated from her daughter's father. (*Id*.) These two stressors in her life led Ms. Walter to seek outpatient treatment for depression at Northwood Health Services beginning around 1994, and she was prescribed a variety of antidepressants to help with the symptoms. (R. 224) Through 2005, Ms. Walter received treatment from a number of providers, including Wheeling Healthright, Upper Ohio Valley Counseling & Behavioral Health, and Northwood Health Systems. In August 2005, Ms. Walter began seeing her most recent therapist, Dr. David Singer. Throughout her treatment, Ms. Walter encountered a number of stressors that caused her depressive episodes, including the death of her mother and close friend, her own diagnosis with cancer, relationship problems with her boyfriend, and her daughter moving in with the daughter's father and stepmother. The latter episode resulted in a one week inpatient treatment at Northwood. (R. 339-358.)

Although the records regarding Ms. Walter's mental health are voluminous, and a full recitation would be inappropriate for this recommendation, several findings do warrant noting. In July 2003, Dr. Midcap of Urgent Care of St. Clairsville wrote a "To Whom It May Concern" letter stating that it was medically necessary to quit her job at Advance Auto Parts. (R. 418.) In May 2004, at the behest of the West Virginia Disability Determination Service, a mental status examination was done on Ms. Walter. (R. 261-66.) That report recommended intensive psychological intervention

in the form of individual psychotherapy and continued prescription medication for its diagnosis of major depressive disorder and panic disorder without agoraphobia. (R. 265.) This diagnosis and recommendation is consistent with that of the providers mentioned in the preceding paragraph. (*See* R. 218-46, 255-60, 329-396, 563-572, 587-634.)

Progress notes by Ms. Walter's current therapist Dr. Singer indicate improvements in her mood following the initial hearing before the ALJ by "continu[ing] to work on strengthening her positive feelings about herself," attending her daughter's school functions, and interacting with her family. (R. 732-800, 1171-1244.) There are progress notes, however, that the depressed mood continued in response to her relationship difficulties with her boyfriend, her finances, and the appeal in this matter. (*Compare e.g.* R. 1176 and 1179 with 1173 and 1177.)

Another mental disability evaluation by the West Virginia Department of Health and Human Resources was conducted in March 2008, associated with the remand by the Appeals Council in this case, which found that Ms. Walter was mentally disabled for SSI purposes. (R. 682-83.) Further psychiatric evaluation by Steven Corder, MD, in 2011 found her prognosis as poor, although Dr. Corder did note that Ms. Walter seemed intoxicated and that her Klonapin use is consistent with an abusive pattern. (1303-1304.)

**D. Testimonial Evidence**

Testimony was taken at the hearing held on March 10, 2009. There is no transcript available from the 2005 hearing, but the following portions of the testimony from the 2009 hearing are relevant to the disposition of the case:

Ms. Walter detailed how the last two jobs she held lasted only several days because one job required her to stand on her feet for long periods of time and the employer would not let her take a

break, and the other job she felt paranoid that the boss's wife was out to get her. The ALJ then questioned Ms. Walter about her claimed disability, and in particular what changed since the prior hearing. Ms. Walter responded with some of the medical findings stated above, and testified that she lives alone in an upstairs apartment and has one of the neighbor's sons help with some chores.

With regards to her physical treatments, Ms. Walter testified that she goes as needed, probably five to six times a year to her family doctor, and once a month to the chiropractor. She testified that she could not lift twenty pounds, that she has trouble walking, and that sitting for long periods makes her lower body numb. As to her mental treatments, Ms. Walter testified that she was found mentally disabled by West Virginia Medicaid. She further testified that she is a very frustrated person and finds it very hard to be around strangers, and that incidents occurring at her past jobs make her fearful that those instances could reoccur in future employment. Ms. Walter said that she sees her therapist twice a month, and that she is on several medications for her depression but she is still depressed. (R. 1369-1394.)

After the VE summarized the work history of Ms. Walter, the ALJ proffered the following hypothetical to the VE:

> [A]ssume a hypothetical individual of the claimant's age, educational background, and work history, who would be able to perform a range of light work; would require a sit/stand option; could perform postural movements occasionally, except could not climb ladders, ropes, or scaffolds; should not be exposed to temperature extremes, humid or wet conditions, or environmental pollutants; should work in a low-stress environment with no production line type of pace, or any kind of decision-making responsibilities; would at this time be limited to unskilled work, involving only routine and repetitive instructions and tasks; should have no interaction with the general public, and no more than occasional interaction with coworkers and supervisors. Would there be any work in the regional or national economy that such a person could perform?

(R. 1396.) The VE responded that there were significant numbers of jobs in the local and national economy as an office helper, mail clerk, and sewing machine operator. (R. 1397-98.) The ALJ then applied an additional limitation for only sedentary work, and the VE again responded that there were significant jobs in the local and national economy as a table worker, document preparer, and ampule sealer. (R. 1398.) Lastly, the VE added that the sit/stand option posed by the ALJ was not in the Dictionary of Occupational Titles, but it was his personal experience that the jobs listed were consistent with an option to sit or stand. (*Id.*)

**E. Lifestyle Evidence**

The following evidence concerning Mr. Walter's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Ms. Walter's alleged impairments affect her daily life. Ms. Walter claims that her disabilities have affected her daily life, in that she does not interact socially with other people because of her depression, and she is limited in her ability to do anything around the house because of the pain associated with her physical impairments. She is still able to travel, however, as she recently went to Florida to visit her sister. She also goes camping with her boyfriend and daughter.

### III. THE MOTIONS FOR SUMMARY JUDGMENT

**A. Contentions of the Parties**

Ms. Walter claims the ALJ erred by: (1) requiring Ms. Walter to give objective evidence for her claims of back and lower extremity pain; (2) not finding that Ms. Walter meets a listing based on the factor of decompensation; (3) rejecting the opinions of several treating sources; (4) lacking substantial evidence to support the credibility finding; (5) failing to fully analyze the SSI claim by not considering evidence after the date last insured; and (6) violating Ms. Walter's due process rights

by incorporating findings from the first denial.

The Commissioner, on the other hand, contends that the ALJ properly considered Ms. Walter's mental and physical impairments, and that the ALJ's decision to discredit some of the evidence was based upon substantial evidence.

## B. The Standards

### 1. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### 2. Judicial Review

Only a final determination of the Commissioner may receive judicial review. *See* 42 U.S.C. §405(g), (h); *Adams v. Heckler*, 799 F.2d 131,133 (4th Cir. 1986). Moreover, An ALJ's findings will be upheld if supported by substantial evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is "not a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but that which a "reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

   *3. Social Security - Medically Determinable Impairment - Burden.*

Ms. Walter bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

## C. DISCUSSION

*1. The ALJ did not err by discrediting Ms. Walter's subjective complaints because he found those complaints to be contrary to the medical evidence.*

Ms. Walter alleges that the ALJ erred by requiring objective evidence to establish a basis for her alleged pain. In *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996), the Fourth Circuit observed:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Thus, in the Fourth Circuit claimants are not entitled to rely exclusively on subjective evidence. Rather, an ALJ is required to consider all evidence in the record, including objective medical evidence, that may discredit a claimant's subjective complaints of pain.

The ALJ here found that Ms. Walter "has medically determinable impairments that could reasonably be expected to cause some of the symptoms described, and the Administrative Law Judge

11

believes that the claimant does experience some neck and back pain." (R. 36.) However, the ALJ found that the objective evidence was inconsistent with the severity of pain she alleges. In making that determination, the ALJ considered medical evidence and statements submitted by her chiropractor and treating physician, including X-rays and MRIs that were unremarkable in several aspects, and showed only mild abnormalities in others, including disc disease and mild disc bulging with no neural compromise. Additionally, the ALJ considered the physical residual functional capacity assessments performed by state agency doctors, and Ms. Walter's own daily activities. Thus, the ALJ based his findings that the objective evidence weighed against Ms. Walter's subjective pain on substantial evidence.

*2. The ALJ did not err in his finding that Ms. Walter did not meet a listing based upon episodes of decompensation.*

Ms. Walter argues that the ALJ failed to consider the element of decompensation because she has been hospitalized for her mental condition, and because the doctors have changed her medications. Episodes of decompensation are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Listing* 12.00C4. Further, Section 12.04 provides that

> affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated

extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

As the language makes clear, in order to meet either the B or C criteria of Listing 12.04 Ms. Walter must show repeated extended episodes of decompensation.

The ALJ found that Ms. Walter "has failed to document any episodes of decompensation," and has "required no inpatient treatment for her mental impairments." (R. 32.) Thus, the ALJ found, Ms. Walter does not meet the B or C criteria of Section 12.04. Although the ALJ erred in finding that Ms. Walter has received no impatient treatment, because she was hospitalized for a one week period after her daughter informed her that she was moving out to live with the daughter's father, that one episode does not show what the Listing requires–repeated extended periods of decompensation.

Even if the Court takes Ms. Walter's claim that there were two hospitalizations, although the Court could only find one in the record before it, it still does not mandate a different result. As a point of comparison, when the Social Security Administration rates the degree of functional limitation resulting from any alleged mental impairment it uses a point scale system. That scale for episodes of decompensation is: none, one or two, three, four or more. The last point on the scale "represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 CFR 416.920a(c)(4). Thus, even in the SSA's equation, Ms. Walter's claim to two episodes of decompensation is on the lower end of the spectrum and represents only a mild functional limitation. Accordingly, the Court finds that the ALJ did not err by finding Ms. Walter did not meet a listing based upon episodes of decompensation.

*3. The ALJ did not err by giving little weight to the opinion of Ms. Walter's treating physician.*

Ms. Walter contends that the ALJ did not give proper weight to evidence submitted by her treating physicians, and that this is reversible error. A treating physician's opinion is afforded controlling weight only if two conditions are met: (1) the opinion is supported by clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Ultimately, it is the responsibility of the Commissioner, not the court, to evaluate the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). When a treating physician's opinion is not supported by clinical findings or is inconsistent with other substantial evidence, the ALJ may give the physician's opinion less weight, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001), but must explain the reasons for discounting the opinion. 20 C.F.R. §§ 404.1527, 416.927. Moreover, administrative findings about whether the claimant meets a Listing, her residual functional capacity, ability to do past relevant work, how vocational factors apply, and whether a claimant is disabled are all reserved to the Commissioner. *See* SSR 96-5p; 20 C.F.R. §§ 404.1527(e), 416.927(e). Thus, statements on these issues, even if made by a treating source, are never entitled to controlling weight, but are evaluated in the context of the entire record. *See* SSR 96-5p.

Ms. Walter had two treating physicians, Dr. Olexo and Dr. Singer, the former a family physician and the latter a mental health specialist.[6] With regard to the physical impairments that Ms.

---

[6]Ms. Walter also regularly sees a chiropractor, but chiropractic opinions are not entitled to weight under the Social Security laws. Under 20 C.F.R. § 416.913(d), chiropractors are considered "other sources," and their opinions are not used to establish the existence of a medically determinable impairment, but may be considered by the ALJ in ascertaining the severity of a claimant's impairments and their effect on the claimant's ability to work. Other source opinions are not entitled to controlling weight. (*Id.*).

Walter has, the ALJ found that the conditions are "not attended by clinical findings that satisfy the requirements of any of the impairments detailed in Section 1.04 of Appendix 1, dealing with disorders of the spine," and that her alleged respiratory impairments are "not attended by clinical findings that satisfy the requirements of any of the impairments detailed in Section 3 of Appendix 1, dealing with the respiratory system." (R. 31.) In coming to his conclusion, the ALJ looked at all of the medical records which were incorporated into the first hearing decision, as well as all new medical records submitted to the date of the instant hearing.

The ALJ reviewed the entirety of the record submitted up until the date of hearing and concluded that the objective findings failed "to establish an objective basis for the degree of back and lower extremity pain alleged by the claimant." (R. 37.) Further, the ALJ found that Ms. Walter "failed to document any ongoing treatment for her alleged chronic obstructive pulmonary disease," and that "[d]espite her complaints of pulmonary problems, she has continued to smoke." Nonetheless, the ALJ still incorporated limitations on the range of work that Ms. Walter could perform to light, and gave Ms. Walter a sit or stand option in his formulation. The Court finds that there was substantial evidence for the ALJ's finding, including objective medical evidence and state agency doctor reports, that Ms. Walter's treating physicians opinions were not entitled to controlling weight.

With regard to Ms. Walters mental impairments, the ALJ found that her symptoms were "related to situational factors concerning her relationship with her teenage daughter and her boyfriend," and that her reasons for leaving past work were not because of any mental disability. The ALJ engaged in a thorough review of the record and found that the "functional limitations associated with the claimant's impairments . . . are not of a level of severity to establish the presence

of a presumptive disability." (R. 32.) The ALJ's findings were based on Ms. Walter's daily activities, social and mental functioning, and any episodes of decompensation, and as the ALJ noted, are entirely consistent with not only Dr. Singer's assessments, but those of a treating nurse practitioner and state agency doctors. (*Id*.) Again, the Court finds that the ALJ's findings regarding Ms. Walter's mental health are supported by substantial evidence.

*4. The ALJ did not err in finding that Ms. Walter's claims of disability were not credible.*

The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). Under Craig, when a claimant alleges disability from subjective symptoms, she must first show the existence of a medically determinable impairment that could cause the symptoms alleged. *Id*. at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment. *Id*. at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements about her symptoms, in determining whether the claimant is disabled. *Id*. at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective medical impairment could not reasonably be expected to cause the symptoms alleged. *Id*.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other

symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c) and 416.929(c) (2010). Accompanying factors, provided in SSR 96-7p, that the adjudicator must also consider, include: medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; statements and reports about claimant's medical history, treatment and response; prior work record and efforts to work; daily activities; and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

In assessing these factors, the ALJ is in a unique situation at a hearing "[b]ecause he has the opportunity to observe the demeanor and to determine the credibility of the claimant," and for these reasons "the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (7th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). Moreover, courts "will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

The Court finds that the ALJ's credibility determination was not "patently wrong." Quite contrary, the ALJ seemingly engaged in a thorough assessment–comprising over ten pages between the two rulings– of Ms. Walter's credibility under the factors prescribed by *Chater*, the SSA, and the Social Security Rulings. The ALJ looked to Ms. Walter's daily activities, which include, among others, doing housework, shopping, cooking, taking public transportation, caring for finances, spending time with her daughter, taking trips, and going camping at her boyfriend's cabin. (R. 32, 35-36.) Further, the ALJ found that Ms. Walter's symptoms come and go based on situational factors, like difficulties with her boyfriend and daughter, and that her medication has controlled her

17

alleged pain to the point where she does not need to take it on some days. (R. 35-36.) Moreover, ALJ noted that treatment for Ms. Walter's alleged impairments have ebbed since the last hearing, with her seeing a doctor every few months, and has made all of these determinations in light of the medical evidence of record.

Finally, Ms. Walter takes issue with the ALJ's determination that secondary gain was a motivating factor behind Ms. Walter's application for disability. Certainly, as Ms. Walter contends, every application for benefits is inherently intertwined with some sort of secondary financial gain. However, it is not improper for an ALJ to take into account the various factors that lead to a decision to seek disability benefits, including secondary gain, especially if the medical evidence does not corroborate the subjective complaints. *See e.g. Leech v. Barnhart*, 177 Fed. Appx. 225, 228 (3d Cir. 2006); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987). Here, the ALJ did not make his decision in a vacuum with only his thoughts of secondary gain; rather, he viewed it in light of all of the relevant evidence, including the timing of Ms. Walter's filings, her financial troubles, and her work history.

In short, an ALJ is free to reject a claim of disabling pain so long as the ALJ: (1) considers the subjective pain; (2) details the reasons for rejecting the claims; and (3) supports the conclusion with medical evidence in the record. *See e.g. Grandillo v. Barnhart*, 105 Fed. Appx. 415, 417 (3d Cir. 2004). Based on the ALJ's perceived sequence of events and Ms. Walter's own testimony and actions, the ALJ found that Ms. Walter was not entirely credible, and, as a result, did not give significant weight to any medical opinion based upon Ms. Walter's subjective complaints. Consequently, the ALJ gave more weight to the objective medical evidence provided by not only the state agency doctors, but Ms. Walter's treating physicians as well. The Court finds that the ALJ

is in a better situation to make these determinations, and that there was substantial evidence, not only

for the ALJ's credibility determination, but also for his finding that Ms. Walter can continue to do

work in the local or national economy.

*5. The ALJ did not fail to consider evidence from after DLI, but before the 2009 decision.*

Ms. Walter argues that the ALJ failed to look at evidence from after the date of last insured,

but before the 2009 denial of benefits, citing specifically to an X-ray taken on November 18, 2008.

However, the ALJ did consider this x-ray, and subsequent treatment leading up to the 2009 hearing:

> The claimant's latest x-rays were performed on November 18, 2008.
> The x-rays of the lumbar spine once again showed a straightening of
> the lumbar spine with loss of the normal lumbar lordosis and mild
> degenerative arthritic changes. The x-rays of the thoracic spine
> showed mild degenerative disc disease and the x-rays of the cervical
> spine were interpreted as an unremarkable examination (Exhibit B-
> 82F). On December 20, 2008, the claimant received emergency room
> treatment for complaints of generalized body pain. She was
> diagnosed as having back pain and the flu. She had a normal
> musculoskeletal and neurological examination. (Exhibit B-83F).

(R. 37.) Even with this most recent evidence, the ALJ stated that the objective evidence did not

establish a basis for the "degree of back and lower extremity pain alleged by the claimant." In

addition to the ALJ's findings and consideration of the evidence, the Appeals Council also

considered several rounds of additional evidence, including the latest x-rays, submitted by Ms.

Walter. (R. 15-17.) Accordingly, the Court finds that the alleged errors are unfounded.

*6. Ms. Walter's due process rights were not violated because the second hearing was independently
based upon substantial evidence*

Finally, Ms. Walter claims that the ALJ improperly relied upon the previous denial of

benefits in formulating his decision in the instant denial. Further, Ms. Walter claims that the ALJ

made his decision based upon a record that is now not completely before this Court. These claims

are unavailing. The Court will note that the ALJ's 2009 decision represents the final decision of the Commissioner, and it is that decision being reviewed on appeal.

First, ALJ's can certainly incorporate findings in prior decisions in making a more current determination. In fact, in most instances they are required to do so. *See Albright v. Commissioner of SSA*, 174 F.3d 473 (4th Cir. 1999); *Social Security Acquiescence Ruling* 94-2(4). The ALJ here did not summarily deny benefits based on a prior holding, nor did he rely solely on prior findings. The ALJ  incorporated findings from a prior hearing, in addition to explaining why the record reveals that Ms. Walter's claim for benefits must fail. In doing so he looked at all of the evidence submitted prior to the earlier hearing, as well as all evidence submitted up to the date of the new hearing, explaining in detail the weight assigned to each piece of evidence and the rationale behind his reaching that decision. Even reviewing the ALJ's 2009 decision with a blind eye to the prior decision, the Court still finds that the decision and the reasons set forth therein are supported by substantial evidence.

Second, the record contains ample evidence to provide for meaningful review. The Social Security Act mandates that the Commissioner "file a certified copy of the transcript of record including the evidence upon which the findings and decision complained of are made." 42 U.S.C. § 405(g). If the reviewing court is "unable to engage in meaningful or informed judicial review due to an incomplete administrative record, the court has the authority to remand the case." *See Strogish v. Astrue*, No. 8-cv-757, 2008 U.S. Dist. LEXIS 101344, *45 (W.D. Pa. Dec. 16, 2008) (citing *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 594 (1980)); *see also* 42 U.S.C. § 405(g). However, remand is not required if the record contains ample evidence to provide for meaningful review. The Court has reviewed the Commissioner's final decision, the ALJ's 2009 determination, and every

exhibit relied upon by the ALJ in formulating his decision is in the record now before the Court. In addition to those exhibits are hundreds, if not thousands, of additional pages that support the findings made by the ALJ. Despite the thirty or so missing pages, which were admittedly missing on the Table of Contents, the Court finds that it has been able to engage in meaningful review.

**D. CONCLUSION**

In sum, the Court finds that the ALJ properly engaged in the sequential evaluation of Ms. Walter's disability claims, and based his decision that she is not disabled within the meaning of the Social Security Act on substantial evidence.

## IV.  RECOMMENDATION

For the foregoing reasons, I recommend that:

1.     Ms. Walter's Motion for Summary Judgment be **DENIED** because: the ALJ properly discredited Ms. Walter's subjective complaints, and any opinions from medical professionals that relied on as much; the ALJ's decision was based upon substantial evidence; and Ms. Walters due process rights were not violated .

2.     Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: November 1, 2012        /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE