IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRACEY LYNNE WALTER,

      Plaintiff,

v.                                        Civil Action No. 5:12CV65
                                                  (STAMP)
MICHAEL ASTRUE,
Commissioner of Social Security,

      Defendant.


**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>AFFIRMING AND ADOPTING REPORT AND</u>**
**<u>RECOMMENDATION OF MAGISTRATE JUDGE</u>**

I.  <u>Background</u>

    The claimant in this civil action filed claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI, first on March 31, 1999, and following the denial of her 1999 petition which she did not appeal, again on March 18, 2004, claiming that she suffered from disability beginning May 15, 2003. The claimant asserted that she suffers from disability due to anxiety, depression, chronic neck and back pain, and chronic obstructive pulmonary disease. Both claims in her second petition were denied both initially and upon reconsideration. The claimant then requested a hearing, which was granted and held before Administrative Law Judge ("ALJ") Karl Alexander. At this hearing, the claimant testified and was represented by a non-lawyer representative. A vocational expert appeared and testified at the

hearing as well.  The ALJ affirmed the denial of the claimant's application for benefits on the grounds that the claimant was not disabled as that term is defined by the Social Security Act because she was able to perform a modified range of unskilled, light work.

The claimant appealed the decision of the ALJ, and the Appeals Council vacated the hearing decision on the grounds that it could not locate or reconstruct the record upon which that decision was based.  At the claimant's second hearing following the remand by the Appeals Council, again before ALJ Karl Alexander, the claimant testified without representation, and waived her right to the same. This second hearing also resulted in an unfavorable decision, which the claimant again appealed.  As a result of the additional evidence provided through the second hearing, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").

The claimant then filed this action against the Commissioner seeking review of the final decision.  The claimant filed a statement of errors, and the defendant filed a motion for summary judgment. United States Magistrate Judge James E. Seibert reviewed the claimant's complaint, the motions by the parties and the administrative record, and issued a report and recommendation recommending that the defendant's motion for summary judgment be granted, that the claimant's statement of errors be denied, and that the matter be dismissed.  Upon submitting his report,

Magistrate Judge Seibert informed the parties that if they objected to any portion of his proposed findings of fact and recommendation for disposition, they must file written objections within fourteen days after being served with a copy of the report. The claimant filed timely objections.

## II. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are clearly erroneous. Because the claimant has objected to the entire report and recommendation, this Court will undertake a de novo review of all of the magistrate judge's findings recommendations therein.

## III. Discussion

The claimant asserts that the ALJ's decision denying her claims should be overturned because (1) the ALJ required Ms. Walter to give objective evidence for her claims of back and lower extremity pain and also improperly found that she lacked credibility; (2) the ALJ failed to find that Ms. Walter meets a listing based on the factor of decompensation; (3) the ALJ rejected the opinions of several treating sources; (4) the ALJ failed to fully analyze the SSI claim by not considering evidence after the

date last insured, but prior to the 2009 decision; and (6) the decision violates the claimant's due process rights by incorporating findings from the claimant's first denial. The defendant asserts in his motion for summary judgment that all of the ALJ's findings were supported by substantial evidence, and that all of the claimant's mental and physical impairments were properly considered.

The magistrate judge's review of the findings of the ALJ was based upon the relevant standard of review that requires that an ALJ opinion be upheld on appeal whenever it is "supported by substantial evidence" and utilized the application of the proper law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Stated another way, review is based upon whether evidence existed in the record to support the findings so as to allow a reasonable person to conclude similarly to the ALJ. The magistrate judge addressed each of the claimant's assignments of error in turn. This Court will address the claimant's arguments and the magistrate judge's findings in a similar manner.

A. Claimant's subjective complaints regarding back and lower extremity pain

Magistrate Judge Seibert found that the ALJ did not err in his decision to discredit the claimant's subjective complaints of back and lower extremity pain, because he found those complaints to be contrary to medical evidence. The magistrate judge correctly

determined that, under the law of the United States Court of Appeals for the Fourth Circuit, while subjective complaints cannot be discredited simply because they are not supported by objective evidence, an ALJ may discredit any subjective complaints which are found to be contrary to the objective evidence on the record, and by common sense and experience of the ALJ.  See Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).  The magistrate judge then found that the ALJ's decision to discredit the claimant's subjective complaints was properly based upon substantial evidence on the record.

The ALJ found, based upon submitted medical records, statements of treating physicians, physical residual functional capacity assessments performed by state doctors, and Ms. Walter's daily activities, that she likely suffered some pain as a result of her "medically determinable impairments," but that the record evidence did not support a finding that her pain and impairments were as severe as she claimed them to be.  The magistrate judge determined that this finding was reasonable and supported by the record evidence.

In her objections to the magistrate judge's recommendations as to this claim of error, the claimant argues that, while the magistrate judge's report and recommendation refers very generally to the objective evidence on record regarding the claimant's physical and mental impairments, it ignores evidence which supports

a finding that her subjective complaints were not properly discredited. The claimant provides this Court with all of that evidence. However, this argument misconstrues this Court's standard of review on appeal in this case. When reviewing an ALJ's credibility determination as to the claimant's subjective complaints, the district court is to give "the ALJ's observations concerning these questions . . . great weight" because "he had the opportunity to observe the demeanor and to determine the credibility of the claimant." Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). As such, a district court is to "reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

In this case, while the claimant believes that the evidence supports the credibility of her testimony regarding subjective complaints, she cannot show that a determination otherwise was "patently wrong." Id. The ALJ in this case supported his findings with record evidence which contradicted the claimant's subjective testimony regarding the severity of her limitations, and also noted that the claimant's own testimony even discredited her subjective description of her level of limitation. He noted specifically that the claimant's assertion that she is "very anti-

social" stood in contrast to her statements that she is involved in an ongoing relationship with a man, spends time with her daughter, travels to see her sister out-of-state, and talks with neighbors and on the telephone. Further, the claimant's testimony that she suffered from severe pain and physical limitations was belied by the fact that she reported only taking one Vicodin per day, and even skipping some days, and that she was able to drive, travel, shop, and care for her own home and daily needs. Finally, the ALJ noted that it appeared that much of the difficulties that caused the claimant to quit her previous two jobs were personal in nature, and not connected to her claimed impairments. While evidence may exist on the record to support her claims, and this Court does not contest that such evidence does exist, the ALJ's opinion was supported by evidence, and cannot be said to be patently incorrect. Thus, his credibility determinations cannot be overturned by this Court.

B.  <u>ALJ's determination that claimant did not meet a listing based upon episodes of decompensation</u>

The claimant next argues that the ALJ's opinion must be overturned because the ALJ failed to consider claimed episodes of decompensation in his determination that the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 § 120.4B. 20 C.F.R. pt. 404 subpt. P, app. 1 § 120.4B

describes functional limitations related to impairments which are incompatible with gainful activity. If a claimant qualifies under one of these listings, she is considered to be disabled under the statute. In order to meet the listing under paragraph B of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04, paragraph B, the claimant must show that her ailment resulted "in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration . . . .

Episodes of decompensation are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Id. at § 12.00C4. The ALJ's opinion in this case found that the claimant failed to document any episodes of decompensation, and noted that she required no inpatient treatment for her mental impairments during the period in question.

In reviewing the ALJ's determinations regarding decompensation, the magistrate judge found that the opinion erroneously stated that the claimant did not require inpatient treatment, because the record shows that the claimant received inpatient treatment for one week following her daughter's decision

8

to move in with the daughter's father.  The magistrate judge also considered, despite finding no evidence of the same, the claimant's assertions that she was hospitalized a second time.  Considering these two errors, the magistrate judge concluded that they were harmless in nature, and consideration of these events did not mandate a finding that the claimant met a listing.  Two inpatient treatment incidents that were relatively limited in duration did not constitute "repeated extended periods of decompensation," according to the magistrate judge.  This Court agrees with the magistrate judge on this point.  Even assuming that the claimant received inpatient treatment twice during the relevant period, it can hardly be said that two episodes of decompensation, each of which lasted a week or less,[1] could be considered repeated or extended.

The Code of Federal Regulations defines the term "<u>repeated episodes of decompensation, each of extended duration</u>" to mean "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  <u>Id.</u> at § 12.00C4 (emphasis in original).  The Code further indicates that the claimant having "more frequent episodes lasting for shorter duration or less frequent episodes of longer duration" must be

---

[1]The inpatient treatment of which the magistrate judge found evidence occurred in late October 2004 and lasted roughly one week. The second inpatient treatment incident of which no evidence was found occurred prior to the October inpatient treatment, in July 2004, and lasted less than two days.

9

evaluated using individual judgment regarding whether the episodes qualify as repeated and extended. Id. In this case, two incidents lasting less than one week over the course of nearly six years cannot so qualify under this standard.

In objection to this finding, the claimant asserts that, in addition to the two inpatient treatments discussed by the magistrate judge, the ALJ also failed to consider whether the claimant's repeated changes in psychotropic medication during the relevant period could constitute further episodes of decompensation. The claimant also lists a significant number of medication changes which occurred between 1994 and her second ALJ hearing.[2] In support of her argument that such occurrences could constitute episodes of decompensation, she cites id. at § 12.00C4, which notes that "[e]pisodes of decompensation may be inferred from medical records showing significant alteration in medication . . . ."

This Court recognizes that significant changes in medication could be inferred as indicating episodes of decompensation, but simply listing a number of medication alterations throughout the relevant period is insufficient to create such an inference. The claimant provides this Court with more than twenty "incidents"

---

[2]This Court notes that not all of the incidents of medication alteration listed are additions, substitutions, or changes in dosage of medication. A number of listings indicate that certain medications were discontinued or decreased.

10

regarding her psychotropic medication during the relevant period. However, the "incidents" provided include everything from simple listings of medication names with no explanation, to notes that certain medications were discontinued or decreased, to notes that certain medications were creating unwanted side effects, to indications that certain medications were actually working.

None of these "incidents" or changes in medication, without more, can be said to represent any "significant alteration of medication," and there is no explanation provided to serve as sufficient evidence to infer an episode of decompensation. There is one notation of the claimant being "at the end of her rope," but this is merely a single incident which occurred in 2005, and there is no evidence of the length of the incident. As noted above, even if this Court were to assume that this incident was an episode of decompensation, this would only result in three episodes of decompensation, none of which can be said to have lasted for two weeks, spread over a two year period. Accordingly, the ALJ did not err in failing to find that episodes of decompensation placed the claimant's mental impairments in a listing.

C. <u>Weight given to claimant's treating physicians</u>

The claimant next argues that the ALJ erred by failing to give sufficient weight to the opinions of her treating physicians. The magistrate judge reviewed this argument, and found that the ALJ properly considered the opinions of the claimant's treating

physicians, and supported his findings with substantial evidence, which included the opinions of these physicians. The magistrate judge correctly noted that all medical opinions must be considered by the ALJ and the Appeals Council. 20 C.F.R. §§ 404.1527(b), 416.927(b). Further, the magistrate judge correctly recognized that "[t]he opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence." Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984). This concept is known as the "treating physician rule."

However, while the opinions of treating physicians are entitled to great weight under this rule, the treating physician rule does not require that they be given controlling weight. Mastro v. Apful, 270 F.3d 171, 178 (4th Cir. 2001). As was noted by the magistrate judge, the final decision as to ultimate issues such as whether or not the claimant is disabled or able to work is always with the ALJ and the Appeals Council, and both of these entities are free to accept or reject medical opinions of treating physicians if the opinions are found to be contradictory to other persuasive evidence on record. 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1); Evans, 734 F.2d at 1015. Further, while "treating physician opinions on issues reserved to the Commissioner," such as the claimant's residual functional capacity, whether a claimant meets a listing, and whether or not a claimant is disabled as that

12

term is defined in the statute, "must never be ignored," opinions on such issues "are never entitled to controlling weight or special significance."  SSR 96-5p.

In this case, throughout the ALJ's opinion, he frequently cites opinions of treating physicians regarding both the claimant's physical and mental limitations, and relies upon these, the submitted medical evidence, and the claimant's own statements to determine the claimant's severe impairments, and to conclude that a number of the claimant's impairments do not qualify as severe. The ALJ even notes that, with the exception of specifically delineated opinions noted below, his conclusions are in line with the opinions of the claimant's treating physicians.

As to the treating physician opinions which were not given much weight, this Court finds that no error was committed.  Dr. Singer's opinion regarding the claimant's concentration issues was rejected as contrary to record evidence specifically outlined in detail in the ALJ's opinion.  Dr. Olexo's opinion regarding the claimant's social issues and that she could not work on a full-time basis or with people due to these issues was rejected both because the ALJ found that Dr. Olexo is not a mental health professional, and because his opinions regarding the claimant's ability to work were those of an ultimate issue, which are entitled to no special weight.  SSR 96-5p.  The ALJ also noted that he found these

opinions to be contrary to evidence regarding the claimant's social activities and relationships.

Further, the ALJ noted that little weight was given to Dr. Corder's opinion regarding the claimant's Global Assessment of Functioning ("GAF"), both because the ALJ found GAF scores generally to be unreliable as relying almost entirely upon the claimant's subjective statements, and because he found that Dr. Corder's assessment was procured at a time when the claimant was under the influence of, and admittedly addicted to, Zanax. The ALJ also noted that the findings of Dr. Corder were contradicted by a significant rise in the claimant's GAF rating at later times, indicating that Dr. Corder's findings were not consistent over a period of twelve or more continuous months. Accordingly, the ALJ properly explained and supported his decision to give little weight to the treating physician opinions which he chose to reject, and this Court finds all of the ALJ's decisions in this regard to be supported by substantial evidence.

In the claimant's objections to the report and recommendation, she asserts that, beyond the treating physician opinion specifically rejected, additional opinions were wholly ignored, an error which mandates remand. In support of this argument, the claimant first argues that a Magnetic Resonance Imaging ("MRI") in the record was signed by Dr. Olexo, and that that MRI was not properly considered. She also asserts that her treating physician

14

placed her on Vicodin and infers that this is somehow an opinion of that physician. However, the claimant does not indicate how a signed MRI or a physician's decision to place her on Vicodin alone can qualify as a treating physician opinion. The claimant cites no law to support this argument, and this Court cannot conclude that every action of a treating physician within the medical records provided to the ALJ can be considered an opinion.

The claimant also fails to explain how any of these "opinions" were given insufficient weight. Specifically, as to the MRI of 10/08 that was signed by Dr. Olexo, which the claimant deems to be serious in nature, while the claimant argues that this MRI was not considered, the record belies this argument. In his denial of the claimant's claims, the ALJ directly cites the "severe" MRI to which the claimant now refers and notes that the MRI showed disc disease at L4-L5. See ECF No. 1 Ex. 1 *11. As such, it is clear that this MRI was considered. Additionally, while the claimant seems to assert that this MRI communicates Dr. Olexo's opinion regarding the severity of claimant's low-back pain and limitations, the MRI actually notes only mild desiccation of the disc with mild narrowing of the disc space, as well as a mild broad disc bulge. The only note written by Dr. Olexo on the MRI states that he intends to refer the claimant to a neurosurgeon of choice. There is no indication of his thoughts regarding severity of the claimant's condition. With regard to her assertions regarding Dr.

15

Olexo's decision to place her on Vicoden, this Court is unable to discern any indication that the entire record before the ALJ was not considered, and the claimant has offered no evidence of the same, nor any indication of how the consideration of this fact should have altered the ALJ's opinion.

The claimant also makes much of claimed opinions of Dr. Midcap, who treated her for a number of years, and from whom a number of record medical records were procured. The claimant asserts that Dr. Midcap's opinions were wholly undiscussed in both the ALJ opinion and in the report and recommendation. However, again, with the exception of a letter written by Dr. Midcap indicating his opinion that the claimant could not work at her job at Advance Auto Parts due to anxiety, this Court is unable to discern any opinions of Dr. Midcap which are expressed in these objective medical records. The records from Dr. Midcap reiterate all of the claimant's anxiety issues which are addressed at length in the ALJ opinion, and also note many of the claimant's physical infirmities which are discussed throughout the ALJ opinion. With regard to Dr. Midcap's letter, there is nothing indicated in that letter that the claimant was entirely unable to work at all, nor is there anything stating that her inability to work would be a continuous rather than temporary. Assuming that the ALJ did not consider, or failed to give weight to this letter, the letter's contents, whether given weight or not, would not mandate a change

in the ALJ's ultimate opinion. As such, this Court finds the claimant's arguments in this regard to be unpersuasive.

D. <u>The ALJ's consideration of evidence following the date last insured but prior to the 2009 decision</u>

After review of the claimant's arguments as to this assignment of error, this Court is unable to discern what evidence from the period following her date last insured and prior to the 2009 decision the claimant argues was not considered by the ALJ that should have been. As the magistrate judge found, the claimant's initial assertions of error argue that the ALJ failed to consider a November 18, 2008 x-ray, when in reality, the ALJ's opinion shows that he did consider this x-ray. However, in the claimant's objections to the magistrate judge's report and recommendation, she acknowledges that this November x-ray was considered, but argues that the previously discussed October 4, 2008 MRI was not considered by the ALJ. As discussed above, this is not true. The ALJ clearly referred to, considered, and relied upon the findings within that MRI in reaching his decision. Thus, this Court finds no merit in this assertion of error.

E. <u>The claimant's due process rights were not violated by the ALJ's opinion</u>

The crux of the claimant's argument in this regard is that the ALJ's second hearing and decision deprived her of due process because the ALJ relied upon his previous decision which had been

overturned due to in incomplete record, and that the complete record upon which the ALJ relied is not now before this Court. The claimant also argues that she was deprived of due process because the ALJ "ignored" certain evidence on the record. However, as this Court previously noted, the claimant has not presented any evidence in the record that was ignored or not considered by the ALJ. As such, this second portion of her argument as to this assignment of error will not be considered.

The magistrate judge found the claimant's arguments relating to the use of the ALJ's previous decision to be without merit on two bases. First, the magistrate judge found that the ALJ did not violate the claimant's due process rights by relying upon his findings in a prior decision in making his more current determinations. He also noted that, in most instances, the ALJ is required to so rely, as found in <u>Albright v. Commissioner of SSA</u>, 174 F.3d 473 (4th Cir. 1999), and <u>Social Security Acquiescence Ruling</u> 94-2(4). The magistrate judge then found that, while the ALJ did rely upon his prior rulings, he considered all evidence submitted both before the prior hearing and until the second hearing, and even simply with evidence before this Court, and the ALJ's findings and conclusions based upon that evidence alone, the ALJ's decision was supported by substantial evidence.

Second, the magistrate judge found that the record submitted to this Court provides ample evidence to engage in meaningful

18

review of the ALJ's decision. Unless the record provided is insufficient to allow a reviewing court to engage in informed judicial review, the magistrate judge found, remand is inappropriate. See Strogish v. Astrue, No. 8-cv-757 2008 U.S. Dist. LEXIS 101344 *45 (W.D. Pa. Dec. 16, 2008) (citing Harrison v. PPG Industries, Inc., 446 U.S. 578, 594 (1980)); see also 42 U.S.C. § 405(g). Finally, the magistrate judge found that, after review, it is clear that every exhibit that the ALJ relied upon for his decision was included in the record before this Court. After de novo review, this Court agrees that the record utilized by the ALJ to reach his decision based upon the claimant's second hearing is sufficiently present before this Court. Further, even excluding the ALJ's reliance upon the previous record upon which he based his previous opinion, the current decision is supported by substantial evidence. Thus, the claimant's due process rights have not been violated.

## IV. Conclusion

After a de novo review, this Court AFFIRMS and ADOPTS the magistrate judge's report and recommendation (ECF No. 26) in its entirety. The defendant's motion for summary judgment (ECF No. 22) is thus GRANTED and the plaintiff's statement of errors (ECF No. 20) is DENIED, and the plaintiff's objections to the magistrate judge's report and recommendation are OVERRULED. The decision of the Commissioner is hereby AFFIRMED. It is further ORDERED that

this case be DISMISSED WITH PREJUDICE and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment in favor of the defendant.

DATED: June 3, 2013

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE